IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **STEVEN ANDERSEN and PATRICIA ANDERSEN,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:20-CV-115-DAK-DBP<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead |

This matter is before the court on Defendant Foremost Insurance Company, Grand Rapids, Michigan's ("Foremost") Motion for Partial Summary Judgment [ECF No. 23] on Plaintiffs Steven and Patricia Andersen's Second Cause of Action for Breach of the Implied Duty of Good Faith and Fair Dealing. On December 8, 2021, the court held a hearing on the motion by Zoom videoconferencing due to the Covid-19 pandemic. At the hearing, Ryan M. Nord represented Plaintiffs and Chet W. Neilson represented Foremost. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

**BACKGROUND**

Foremost insured the Andersens under a homeowner's policy from June 6, 2018, to June 6, 2019. The Andersens made a claim on the policy after a hailstorm damaged their cedar shake roof. After inspecting the roof, on October 17, 2018, Foremost's claims adjuster James Scanlan sent a letter to the Andersens, advising them that the "investigation found that . . . there are 5

shakes per square that were noted as having hail damage to them" and tendering a $3,956.00 payment to replace all hail-damaged wood shakes, less the policy deductible and recoverable depreciation.

The Andersens entered into a contract with a public adjuster, Chris Little of Utah Public Adjusters, to inspect the property and agreeing to pay him 10% of the additional repair costs obtained from Foremost.   On March 11, 2020, a year-and-a-half after Foremost tendered payment on the claim, Little sent Foremost's claims adjuster, James Scanlan, an email, stating that he represented the Andersens and enclosing his estimate for a full roof replacement.   On April 6, 2020, Little sent another email to Scanlan, explaining that "due to the age and condition of the roof, it is not possible to repair it without consequential damage . . . , which is why we have written for a full replacement."

On April 7, 2020, Scanlan responded to Little stating that the roof was repairable.   Scanlan explained that "[r]oofers make repairs to wood shake roofs all the time.   This roof is no different. Repairs can be made to this roof by using shakes to replace those that are directly physically damaged by hail. That's exactly what my estimate entails."

On May 26, 2020, Little sent an email to Scanlan, stating: "When a wood shake roof is installed there is a layer of felt that goes on each row of wood shake. When replacing the damaged shakes it causes the felt to tear in different directions due to its age. Also the valley metal had hail damage to it. The valley metal goes at least 18" onto each slope. So when you replace the valley metal you take off the wood shakes you end up needing to replace the entire slope."   The Andersens also claim that the storm damage on the roof led to interior damage and damaged the gutters and downspouts, which would need to be replaced.   Foremost did not pay for replacing the soft metals that were damaged or the interior damage.

The Andersens' homeowner's policy includes the following appraisal provision: "Appraisal.   If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.   In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other.   The two appraisers will choose an umpire.   If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the premises is located.   The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.   If they fail to agree, they will submit their differences to the umpire.   A decision agreed to by any two will set the amount of the loss."

The Andersens did not invoke the policy's appraisal provision when they disagreed with Foremost's appraisal of the loss. Instead, the Andersens hired their own adjuster and agreed to pay their adjuster a percentage fee.   When Foremost and the public adjuster disagreed on the scope of the loss, the Andersens again did not invoke the appraisal provision.   Instead, the Andersens hired a lawyer, agreed to pay a 35% percentage fee, and filed this lawsuit.   In response to Foremost's present Motion for Partial Summary Judgment on the Breach of Good Faith and Fair Dealing Claim, Plaintiffs state that they are now invoking the policy's appraisal process.   Foremost, however, states that it is not possible to invoke the appraisal provision at this point because the Andersens have already paid to replace the entire roof and there is no longer a "loss" that an independent appraiser could inspect and appraise.

The Andersens claim that the storm caused $102,569 in damage.   In discovery, the Andersens confirmed that the damages they are seeking in this action are: 1) the costs of repairs necessitated by the hailstorm; 2) the public adjuster fee of 10% of the repair costs; 3) the attorney's fee of 35% of the amount awarded; and 4) prejudgment interest.

## DISCUSSION

### **Foremost's Motion for Partial Summary Judgment**

Foremost argues that the Andersens' Second Cause of Action for Breach of the Duty of Good Faith and Fair Dealing fails as a matter of law because the Andersens have not alleged damages for that cause of action, separate and apart from their alleged breach of contract damages. Because this diversity case involves a "first-party" insurance claim under Utah law, the insured and insurer are, "in effect and practically speaking, adversaries." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985). A first-party insurance claim is purely contractual. *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 532 (Utah 2002). The insurer is simply obligated "to pay claims submitted by the insured in accordance with the contract." *Beck*, 701 P.2d at 800.

In *Beck*, however, the Utah Supreme Court recognized that an implied duty of good faith and fair dealing exists in every insurance contract. *Id.* at 801. This implied duty "contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Id.* The Utah Supreme Court has subsequently clarified that an improper denial of a claim does not automatically create a breach of the implied duty of good faith and fair dealing. In *Jones v. Farmers Ins. Exchange*, the court stated that "an insurer cannot be held to have breached the covenant of good faith 'on the ground that it wrongfully denied coverage if the insured's claim, although later found to be proper, was fairly debatable at the time it was denied.'" 2012 UT 52, ¶ 7, 286 P.3d 301, 304 (citation omitted).

"[T]he covenant of good faith and fair dealing . . . is [not] confined to the obligations imposed by the contract itself." *Blakely v. USAA Cas. Ins.*, 633 F.3d 944, 947 (10th Cir. 2011). But, in *Blakely v. USAA Cas. Ins.*, 2015 WL 1522752 (Apr. 2, 2015), Judge Jenkins recognized

that "[t]he implied terms are not stand-alone provisions but provisions of the contract that must be viewed and construed as part of the whole contract. The implied words do not purport to change the expressed terms of the written contract, and the division of responsibilities between parties, as defined therein, but to emphasize the implicit duties of the insurance company. Those duties are a given, but in no sense do they relieve the company or the insured of their own duties under the written contract. The words, implied and expressed, need to be considered as a whole. The insureds are still bound by the expressed contract they entered into." *Id.* at \*6; *see also Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 262 (Utah 2005) (relief under the implied covenant must be "consistent with the agreed common purpose of the contract.").

In this case, Foremost questions whether the Andersens have advanced a theory of recoverable damages attributable to their breach of the implied duty claim that are separate from the damages they seek under their breach of contract claim. Under Utah law, "[d]amages recoverable for breach of contract include both general damages, *i.e.*, those flowing naturally from the breach, and consequential damages, *i.e.*, those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Beck*, 701 P.2d at 801. The *Beck* court explained that one of the primary purposes of recognizing a claim for breach of the implied duty is "to remove any incentive for insurers to breach the duty of good faith by expanding their exposure to damages caused by such a breach beyond the predictable fixed dollar amount of coverage provided by the policy." *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 466 (Utah 1996). The *Beck* court gave examples of recoverable damages in such a claim and those examples include damages that are separate and apart from the amounts allegedly owed under the insurance contract, *i.e.,* the breach of contract damages.

The *Billings* court further explained the fundamental difference between breach of contract

damages and those that can support a breach of the implied covenant claim: "[T]he implied covenant imposes a duty on first-party insurers to act in an objectively reasonable manner in handling an insured's claim.  It would not further *Beck's* purpose of encouraging insurers to act reasonably if we were to impose the broad consequential damages allowed in *Beck* on every insurer who is ultimately determined by a court to have incorrectly denied coverage, regardless of how reasonable the denial.  Such an insurer ought to incur no greater damage exposure than any other person breaching the express terms of a contract.  Indeed, it would be unfair not to permit an insurer who has a legitimate dispute with an insured over a claim to have the dispute resolved before having to pay the claim.  Exposure to the sweeping measure of damages available for breach of the implied covenant would effectively deny any careful insurer the option of declining to pay a contested claim and awaiting the outcome of the dispute."  *Id.* at 466-67.

In *Blakely*, the insureds sued their insurer for breach of the implied covenant of good faith and fair dealing when the insureds and insurer disagreed on the scope of loss after a house fire. *Blakely v. USAA Casualty Ins.*, 691 Fed. Appx. 526, 528, 531 (10th Cir. 2017).  The insurer paid $93,332.20 on the claim based on its adjuster's findings.  *Id.* at 529.  But the insureds, claiming greater damage, invoked their policy's appraisal provision and asserted that they were entitled to $468,575.05.  *Id.*  The three appraisers retained under the policy's terms awarded $291,356.52, and the insurer paid the additional $197,524.32.  *Id.*  The insureds then filed suit alleging that the insurer breach the implied covenant of good faith and fair dealing by not paying enough on the claim initially.  *Id.*  The Tenth Circuit acknowledged the distinction between breach of contract damages and breach of the implied covenant damages and noted that, under Utah law, for a breach of the implied covenant, "an insured is entitled only to those consequential damages reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was

made." *Id.* at 533. The Tenth Circuit concluded that the insureds failed to advance a viable theory of recoverable damages under the implied covenant with respect to alleged emotional distress damages, additional costs under the policy's appraisal provisions, and attorney's fees.

Another recent opinion similarly confirmed that "[a] party alleging a breach of the covenant of good faith and fair dealing must . . . show not only that the covenant was breached, but also that the breach resulted in reasonably foreseeable damages." *Christensen v. Mid-Century Ins. Co.*, 2020 WL 619437, *2 (D. Utah 2020) (citing *Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204, 1209 (Utah Ct. App. 1997)).

The court agrees with Foremost that if a breach of the implied covenant could be supported by mere breach of contract damages, the two causes of action would effectively be conflated. In this case, the Andersens confirmed that the only damages they seek are costs of the repairs, the public adjuster's fee, their attorney's fee, and prejudgment interest. These are all breach of contract damages.

With respect to the repair costs, the Andersens are bound by the policy's appraisal provision. When the Andersens disagreed with Foremost's determination of the scope of loss, they needed to invoke the policy's appraisal provision. This is not a case where an insurer was unresponsive or dilatory with a claim. Foremost timely processed the claim. To the extent that there was a dispute as to Foremost's determination, the parties needed to comply with the contractual provisions relating to such disputes. The Andersens cannot operate outside the policy's provisions and expect to obtain the costs of repair under the implied covenant if they are not entitled to them under a breach of contract. The implied duty of good faith and fair dealing cannot contradict the clear provisions of the policy. Granting damages for repair costs that were not evaluated pursuant to the policy's appraisal provision would require the court to override an

express provision of the policy.   Because the Andersens did not invoke the appraisal provision before replacing the roof, there is no way for the appraisal process to occur under the terms of the policy.   The Andersens cannot assert a claim for damages under the implied duty of good faith and fair dealing that contradicts the express terms of the parties' contract.

The Andersens contend that a Model Utah Jury Instruction, MUJI 21.9, allows a jury to consider the loss of the insured's property in determining the damages to award for a breach of an implied duty of good faith and fair dealing.   The Andersens claim that applying MUJI 21.9 to this case would allow a jury to consider the repair costs as part of the damages under their implied duty claim.   But model jury instructions do not create law and do not supersede the provisions of the parties' contract.   And a breach of the implied covenant of good faith and fair dealing cannot contradict or supersede the policy's express terms for resolving a dispute regarding the scope of necessary repairs.   The Andersens also claim that the scope of repairs remains disputed, but their failure to invoke the appraisal provision before replacing the damaged roof has made it impossible for the parties to comply with that provision.   Because the contract provided an express process for resolving the dispute it was not foreseeable under the terms of the contract that the Andersens would seek repair costs through a process not provided for in the contract.

The disputed amount of repair costs do not support the Andersens' breach of the implied covenant claim.   If additional amounts are owing, those are breach of contract damages.   If the Andersens' assertion was correct, every contract dispute regarding amounts owing would automatically turn into a breach of the implied covenant.   Utah courts have expressly explained that a dispute regarding the proper benefits under an insurance contract do not automatically create a breach of the implied duty of good faith and fair dealing.   The relevant law on this issue is clear and was illustrated by the Tenth Circuit decision in *Blakely*.   The Andersens do not adequately

distinguish *Blakely*, and *Blakely* makes clear that the parties' differences regarding the scope of loss is breach of contract damages.

Similarly, with respect to the Andersens' requested public adjuster's fees and attorney's fees, such fees were not foreseeable given the terms of the insurance contract. Had the Andersens invoked the policy's appraisal provision allowing for resolution of the disagreement over the scope of loss, they would not have incurred these outside costs. The Andersens voluntarily chose to incur these fees instead of complying with the terms of the contract. The Andersens cannot circumvent the policy's provisions and manufacture damages in support of a breach of the implied covenant claim. The Andersens claim that the attorney's fees and public adjuster's fees were foreseeable under the terms of the contract because the contract contemplated the possibility of a lawsuit. But there is nothing foreseeable about the Andersens going outside the terms of the contract to incur these fees instead of following the policy's appraisal provision. Therefore, these fees cannot be the basis of the Andersens' breach of the implied covenant of good faith claim.

The Andersens contend that invoking appraisal does not limit or affect the recoverability of attorney fees and public adjuster fees because an insured is entitled to recover attorney fees and other damages incurred in pursuing a claim for breach of an express or implied obligation. *Canyon Country Store v. Bracey*, 781 P.2d 414, 420 (Utah 1989). But the *Blakely* court refused to accept that "self-inflicted injuries would have been foreseen by the parties or within their reasonable expectations, as *Beck* requires. As articulated in *Beck*, Utah law limits an award of consequential damages to 'those [harms] reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made.'" *Blakely*, 691 Fed. Appx. at 541 (quoting *Beck*, 701 P.2d at 801). Attorney's "fees and costs . . . are not stand-alone damages sufficient to support a breach of the implied covenant claim." *Blakely v. USAA Cas. Ins.*, 2015

9

WL 1522752, *11 (D. Utah 2015). Plaintiffs "must have otherwise suffered damages from the alleged breach before they can assert a claim for the fees and costs associated with bringing . . . [an] action" for breach of the implied covenant. *Id.*

In the context of a claim for breach of the implied covenant, "[t]o survive summary judgment, [a] Plaintiff must offer at least some evidence of damages suffered as a result of [the insurer's] breach of the implied covenant of good faith and fair dealing." *Christensen v. Mid-Century Ins. Co.*, 2020 WL 619437, *2 (D. Utah 2020). This evidentiary burden includes not only evidence of damages but also evidence of conduct from which the damages allegedly flowed which breached the implied covenant of good faith and fair dealing. *Blakely*, 691 Fed. Appx. at 533. It is not enough to simply provide evidence of a claim decision with which Plaintiffs disagree. A legitimate dispute is not subject to "exposure to the sweeping measure of damages available for breach of the implied covenant." *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 467 (Utah 1996).

The Andersens concede that the only damages they seek are the disputed repair costs and the fees and costs associated with those costs. These damages are breach of contract damages, not breach of the implied covenant of good faith and fair dealing damages. In addition, the Andersens fail to present or allege any misconduct from which the damages allegedly flowed that a jury could reasonably conclude breached the implied covenant of good faith and fair dealing. Foremost timely addressed their claim for loss. And it was the Andersens who failed to follow the policy's terms for resolving a dispute as to the scope of loss. Therefore, the court concludes that the Andersens have presented no viable claim for damages under their breach of the implied covenant of good faith and fair dealing claim. Accordingly, the court grants Foremost's motion for summary judgment on the Andersen's Second Cause of Action.

## **CONCLUSION**

Based on the above reasoning, Foremost's Motion for Partial Summary Judgment [ECF No. 23] is GRANTED.

DATED this 22nd day of December, 2021.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE
